Gerald D. BENNETT,

Judith Grimm, Intervenor-Plaintiff.

v.

Samuel LOPEMAN, Rollin D. Jauchius, Raymond Ross, Roberta Steinbacher, Ohio Bell Telephone Company.

No. C83–769.

United States District Court, N.D. Ohio, E.D.

Dec. 4, 1984.

Robert H. Bonthius, Jr., David B. Dawson, Thomas W. Weeks, Cleveland, Ohio, for Bennett.

Pat Booth Rosenthal, Youngstown, Ohio, for Grimm.

Rita S. Eppler, Asst. Atty. Gen., Columbus, Ohio, for Lopeman, Jauchius, Ross and Steinbacher.

Thomas A. Linton, Cleveland, Ohio, for Ohio Bell Telephone Co.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

This matter comes before the Court on Defendants' Motion for Summary Judg-ment and Plaintiff's Cross-Motion for Summary Judgment, both pursuant to Federal Rule of Civil Procedure 56. This Court denies Defendants' Motion for Summary Judgment and grants Plaintiff's Motion for Summary Judgment for the reasons out-lined below.

I.

### A. FACTS

Plaintiff, Gerald Bennett, was a mainte-nance employee of the Ohio Bell Telephone Company until May 11, 1982 when he was discharged. On June 1, 1982. Plaintiff applied for unemployment benefits at the Ohio Bureau of Employment Services (OBES). On July 2, 1982, Robert Stein-backer, the OBES Administrator, denied Plaintiff's application for benefits on the ground that his discharge was for just cause and that he was therefore ineligible for unemployment compensation under Ohio Revised Code § 4141.29(D)(2)(a).

Plaintiff Bennett filed a timely reconsid-eration request under Ohio Revised Code § 4141.28(G)(1). On September 20, 1982, the OBES administrator reversed the initial denial of benefits. Mr. Bennett began re-ceiving unemployment benefits. Ohio Bell Telephone Company appealed the OBES re-consideration decision to the Unemploy-ment Compensation Board of Review (here-inafter referred to as the "Board") pursu-ant to O.R.C. § 4141.28(H). On October 8, 1982, a hearing was held before a Board referee. On October 18, 1982, the referee issued a decision reversing the OBES ad-ministrator's reconsideration decision and thereby denied Plaintiff's benefits. On Oc-tober 22, 1982, Mr. Bennett filed an applica-tion with the Board for further appeal pur-suant to O.R.C. § 4141.28(L). Defendant Charles S. Lopeman is Chairman of the Board of Review; Defendants Rollin D. Jauchius and Ray Ross are members of that Board.

On November 24, 1982, the Board denied Plaintiffs' application for further appeal. This decision in effect affirmed the refer-

ee's denial of benefits to Plaintiff. It is undisputed that the Board's records indicate that the Board's decision was mailed to Bennett's correct address on November 24, 1982.

Bennett, however, never received this letter. He continued to receive benefit checks up to and including January 8, 1983. On or about January 22, 1983, Plaintiff Bennett received from OBES a notice dated January 21, 1983, stating that he had been overpaid $3,381.00 in unemployment benefits since November 24, 1982, the date on which Bennett's last appeal had been denied. Plaintiffs contend and Defendants do not dispute that this was the first time Mr. Bennett learned that his application for further appeal had been denied. Plaintiff did not file an appeal with the Cuyahoga County Court of Common Pleas within 30 days of the date the Board's decision was mailed.[1]

### B. PROCEDURAL HISTORY.

On February 22, 1983, Mr. Bennett filed a motion for leave to proceed *in forma pauperis* and a complaint in this action in this Court. Later on February 22, 1983, Mr. Bennett filed a notice of appeal in Cuyahoga County Common Pleas Court appealing the Board's determination of his appeal and application to institute further appeal. *Bennett v. Administrator, et al.,*

No. 55512. On April 13, 1983, Defendant Administrator moved to dismiss Bennett's state court appeal. On June 7, 1983, Bennett filed a Motion for Stay of Proceedings and Reservation of Federal Constitutional Questions in the Common Pleas Court. On June 17, 1983, the Court of Common Pleas granted the stay.

### II.

The issue before this Court is whether Ohio Revised Code § 4141.28(O)[2] violates the due process and equal protection clause of the 14th Amendment of the United States Constitution. The statute preserves an unemployment benefits claimant's right to appeal upon the claimant's filing a notice of appeal within 30 days of the *date of mailing of the last administrative decision on the claim.* The instant case is essentially a story of a wayward letter and whether Plaintiff should be denied his appeal rights because of the circumstance of his not receiving the letter.

This Court will first determine the jurisdictional and procedural issues raised in Defendants' Summary Judgment Motion before moving to the merits.

### A. THE ELEVENTH AMENDMENT

Defendants Lopeman, Jauchius, Ross, and Steinbacher (hereinafter referred to as

---

1. Plaintiff Judith Grimm was permitted to intervene in this case pursuant to Federal Rule of Civil Procedure 24(b) in this Court's order of November 30, 1983. Plaintiff Grimm worked as a cook for the International House of Pancakes. She too was denied unemployment compensation benefits. She also claims she never received notice of the Board of Review's denial of her application for appeal. Upon the granting of intervention by this Court, Grimm became a party to this action and is entitled to litigate all her interests on the merits. See *United States v. Board of Education,* 605 F.2d 573, 28 Fed.R. Serv.2d (Callaghan) 97 (2d Cir.1979); *see also Piccard v. Sperry Corp.,* 36 F.Supp. 1006 (S.D.N. Y.), *aff'd* 120 F.2d 328 (2d Cir.1941). Because of her status as a full party, plaintiff Grimm is bound by the prior orders as well as all findings of fact and adjudications of law made by this Court. *Russo v. Kirby,* 15 Fed.R.Serv.2d (Callaghan) 826 (E.D.N.Y.1971). Hence, plaintiff Grimm's motion for summary judgment is granted and her ability to proceed with an ap-

peal in the Court of Common Pleas on her denial of unemployment benefits is restored.

2. O.R.C. § 4141.28(O) reads in pertinent part:
 *Any interested party may ... within thirty days after notice of the decision of the board was mailed to the last known post office address of all interested parties, appeal from the decision of the board to the court of common pleas of the county* wherein the appellant, if an employee, is resident or was last employed or of the county wherein the appellant, if an employer, is resident or has his principal place of business in this state. Such appeal shall be taken within such thirty days by the appellant by filing a notice of appeal with the clerk of the court of common pleas, with the board, and upon all appellees by certified mail to their last known post office address. Such notice of appeal shall set forth the decision appealed from and the errors therein complained of. Proof of the filing of such notice with the board shall be filed with the clerk .... [emphasis added].

"State Defendants") contend that the Eleventh Amendment bars Plaintiff's suit against them. The Eleventh Amendment states:

> The judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

 Defendant misapprehends the meaning of the Eleventh Amendment and its relationship within the Constitutional framework, particularly with regard to the 14th Amendment. The core meaning of the Eleventh Amendment, and the impetus for its adoption, was the protection of state treasuries from the enforcement of judgments by out-of-state creditors. *See Chisolm v. Georgia*, 2 Dall. 419 (1793); *see also* H. Hart & H. Wechsler, *The Federal Courts and the Federal System* 253–54 (2d ed. 1973). Since in the instant case, Plaintiffs do not seek monetary damages but only injunctive and declaratory relief, the core meaning of the Eleventh Amendment is not implicated.[3]

As the Supreme Court has developed Eleventh Amendment jurisprudence, the proposition that any claim against a state is barred has been all but destroyed. In *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Court ruled that the attorney general of Minnesota could be sued to enjoin the enforcement of state statute which violated the Constitution. Justice Peckham's majority opinion for the Court states:

> The act to be *enforced* is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect

the state in its governmental capacity .... If the act which the [state official] seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

*Ex Parte Young*, 209 U.S. at 159–60, 28 S.Ct. at 454.

In the instant case, plaintiffs are proceeding against the state officials responsible for enforcing what they allege is an unconstitutional state statute. Plaintiffs are acting consistent with the "stripping doctrine" as stated in *Ex Parte Young*. Subsequent cases have affirmed the *Ex Parte Young* doctrine. *See Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982); *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Georgia R.R. & Banking v. Redwine*, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952).

As to the equitable relief sought, two cases frame the parameters of the 11th Amendment analysis. In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court ruled that the Eleventh Amendment does not bar *prospective* injunctive relief, only retroactive injunctive relief. The distinction between prospective relief and retroactive relief is often puzzling. However, the fact situation in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), is sufficiently analogous to the instant case to serve as a guide. In *Quern*, class action plaintiffs

---

**3.** It is true that Plaintiff will ultimately seek unemployment benefits in his state court action that will come out of the state treasury. However, the Court need not address the Eleventh Amendment implication of this fact since the action before it does not ask for a judgment on the merits of Plaintiffs claim for benefits but only on his right to appeal. As for Plaintiff's request for costs and attorney's fees, this Court considers such fees an "ancillary effect on the state treasury [made] permissible and ... an inevitable consequence of the principle announced in *Ex Parte Young*." *See Edelman v. Georgia*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

claimed that they had been wrongfully denied welfare benefits by a public official in Illinois. Although plaintiffs were not entitled to receive retroactive welfare benefits, *Edelman,* 415 U.S. at 651, 94 S.Ct. at 1347, the district court and Seventh Circuit ordered state officials to send to each member of the plaintiff class a notice informing the recipient that he had been denied benefits [4] and a notice of appeal by which he could request a hearing on the denial of benefits.

The Supreme Court ruled in *Quern* that such a notice of appeal constitutes permissible prospective relief which does not violate the Eleventh Amendment. "We think this relief falls on the *Ex parte Young* side of the Eleventh Amendment line rather than on the *Edelman* side." *Quern,* 440 U.S. at 347, 99 S.Ct. at 1148. The Supreme Court's dicta in that case is relevant:

> Whether a recipient of notice decides to take advantage of those available state procedures is left completely to the discretion of that particular class member; the federal court plays no role in that decision. And whether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, courts and legislature, not with the federal court.

*Quern,* 440 U.S. at 348, 99 S.Ct. at 1149.

While state defendants are correct in citing *Quern* for the proposition that § 1983 was not intended to override the traditional sovereign immunity of the states, the case does not deny all relief against the state but only on retroactive monetary awards from the state treasury.[5] *Florida Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982).

It is true that *Treasure Salvors* stated that a state agency or department may not be sued unless it has waived its immunity. The Court went on to state, however, that "The Eleventh Amendment does not bar all claims against officers of the state, even when directed to actions taken in their official capacity and defended by the most senior legal officers in the executive branch of the state government." *Id.* 458 U.S. at 684, 102 S.Ct. at 3314. The Court recognized the irony of *Ex parte Young* that "unconstitutional conduct by a state officer may be 'state action' for purposes of the Fourteenth Amendment yet not attributable to the state for purposes of the Eleventh." *Id.* at 685, 102 S.Ct. at 3315. This Court affirms the underlying "fiction" of *Ex parte Young* and embraces its theory: without a means to sue public officials, individuals would be denied the very mechanism contemplated under § 1983 to vindicate their rights. Since the instant action seeks only declaratory relief and the state defendants are named only in their individual capacities, the Eleventh Amendment does not bar this action.

### B. QUASI–JUDICIAL IMMUNITY.

State Defendants Lopeman, Jauchius, and Ross assert that they are absolutely immune from liability because their conduct is of a judicial or quasi-judicial nature. Once again, Defendants cite cases in which the plaintiff sought monetary damages; these authorities are therefore inapposite to the instant case where only declaratory relief is sought. Specifically, in *Harlow v. Fitzgerald,* 457 U.S. 800, 819 n. 34, 102 S.Ct. 2727, 2739 n. 34, 73 L.Ed.2d 396 (1982), the Court stated this restriction: "We emphasize that our decision applies

---

**4.** The specific issue in *Quern* was whether the District Court's notice which said the plaintiffs were "denied public assistance to which you were entitled," *Quern* 440 U.S. at 335, 99 S.Ct. at 1142, created a retroactive liability whereas the Seventh Circuit notice said plaintiffs *may* or may not be *eligible* for past benefits. *Id.* at 336, 99 S.Ct. at 1142. The Supreme Court affirmed the Circuit Court's notice. The notice in the instant case is analgous to that in Quern in that it is merely explanatory of the status of an individual's claim and right to appeal and does not create any obligations on the state treasury.

**5.** Because this Court has already determined that its decision does not directly judge the merits of plaintiff's claim for benefits (but only his *right* to appeal), it will not address the issue of whether the actual payment of benefits plaintiff may ultimately receive will violate the Eleventh Amendment if it comes out of state funds or a separate account.

only to suits for civil *damages* arising from actions within the scope of an official's duties and in objective good faith. We express no view as to the conditions in which injunctive or declaratory relief might be available." (emphasis in original).[6]

The courts have not barred all injunctive or declaratory relief against officials exercising discretionary authority. Furthermore, the balancing of competing values which is contemplated in the immunity determination for such officials, *see Butz v. Economou,* 438 U.S. 478, 507–08, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978), does not argue in favor of immunity in the instant case. Any declaratory relief granted by this Court will not interfere with the discretionary functions of the named defendants. Rather, what is at issue here is what procedures the officials must take to "publicize" the results of the exercise of their discretion, i.e. how are claimants to be notified of their review status and appeal rights. This Court need not address the issue of good faith immunity in this context as that doctrine too is applicable only to damage actions.

## C. RES JUDICATA/COLLATERAL ESTOPPEL

■ Defendants claim that the doctrines of *res judicata* and *collateral estoppel*[7] serve as absolute bars to Plaintiff's action. Although not very clearly stated, Defendants' argument seems to be that since Plaintiff's unemployment benefits claim was decided on the merits by the OBES Administrator and the Unemployment Compensation Board of Review that the Plaintiff has had a final decision by a state administrative board on his claims, this Court may not consider the issues.

■ First, defendants once again do not understand the particular nature of Plaintiff's action. This suit does not seek a determination of Plaintiff's claim to benefits on the merits; rather it is to establish Plaintiff's right to appeal a decision on the merits. This Court's decision does not address the substantive findings of the administrative agencies below. Hence, *res judicata* is not implicated in this case. Defendants, nonetheless, assert that *res judicata* prohibits future litigation on issues which were decided as well as on those issues which could have been decided. However, in the instant case, the matter which Plaintiff challenges did not arise at either the OBES Administrator level nor at the Board review stage. Namely, Plaintiff attacks the means by which the time his right to appeal begins to run. He clearly could not challenge his ability to appeal until the Board had issued its decision and mailed out its notice. Indeed, it is entirely conceivable that Plaintiff would not have been here today if he had received that letter. Additionally, Plaintiff could not have raised a constitutional challenge before the Board of Review since it is not within the purview of that body to decide constitutional questions. The only matter before the Board was the correctness of the Administrator's decision to award Plaintiff benefits.

Furthermore, the two principal cases Defendants cite in support of their *res judicata* argument involve issues which were ripe at the time of the original administrative or judicial proceeding. In *McCulloch Inter-*

---

**6.** *Harlow* is further inapposite since it alleged unlawful discharge of petitioners by senior aides and advisers to the President. The Court specifically stated "This case involves no issue concerning the elements of the immunity available to state officials sued for constitutional violations under 42 U.S.C. § 1983." *Id.,* 457 U.S. at 818 n. 30, 102 S.Ct. at 2738–39 n. 30.

**7.** Defendants do not distinguish between *res judicata* and *collateral estoppel.* Plaintiff notes this fact and agrees. For precision's sake, however, this Court identifies the doctrine that Defendant invokes as *res judicata* and not *collater-* *al estoppel.* Although the distinction between the terms has been blurred, *collateral estoppel* signifies preclusion of relitigation of the same issue in a different cause of action whereas res judicata is relitigation of the same cause of action. 21 Fed.Proc.L.Ed. 588–89 (1984). In this case, Defendants essentially argue that Plaintiff's unemployment benefits have already been determined at the administrative level on the merits and should not be adjudicated again here. Hence, the principle at issue is one of *res judicata.*

*state Gas Corp. v. Federal Power Commission*, 536 F.2d 910 (10th Cir.1976), the Federal Power Commission on July 17, 1973 ruled that it lacked jurisdiction to prevent the construction of a third party's gas pipeline that McCulloch Corporation claimed was interfering with its gas production. McCulloch did not seek judicial review of the FPC denial of jurisdiction. *Id.* at 912. Subsequently, on April 12, 1974, the FPC granted Phillips a limited license to sell and deliver gas and then on December 12, 1974, a permanent license. McCulloch once again alleged that the FPC had jurisdiction although it had failed to appeal the jurisdiction twice before. *Id.* at 912. It is therefore understandable that the 10th Circuit would deny McCulloch's appeal as being collaterally estopped: "A party may not collaterally attack the validity of a prior agency order in a subsequent proceeding .... An agency's determination of facts underlying its conclusion that jurisdiction was lacking must be given effect in subsequent litigation." *Id.* at 913. Hence, in *McCulloch* the jurisdictional issue had been decided earlier but was not appealed by McCulloch until a subsequent administrative proceeding, namely Phillips' application for a license.

In the case of *Coogan v. Cincinnati Bar Assoc.*, 431 F.2d 1209 (1970), Coogan was indefinitely suspended from the practice of law by the Ohio Supreme Court. Coogan filed suit in District Court claiming a violation of his rights as secured under the Civil Rights Act. Coogan claimed that he had an agreement with the Cincinnati Bar Association that he be suspended from practice for six months. The Court of Appeals noted that Coogan had never raised the fact of any such agreement with the bar association at the administrative level before the Board of Commissioners and that he never objected to the Board of Commissioners about their use of an affidavit (an objection which he subsequently claimed in his district court case under the Civil Rights Act.) Hence, the Court of Appeals was not sympathetic to Coogan's use of the Civil Rights Act to challenge evidentiary and factual findings of the Board of Commissioners

made final in the Ohio Supreme Court's decision to disbar Coogan. Once again, the issues Coogan sought to raise in his federal court case were already present and amenable to being raised at the administrative level; the Plaintiff in the instant case had no such opportunity.

This Court finds it astounding that Defendant would state that "[t]he fact that plaintiff now challenges the administrative decision in this matter as made in violation of his constitutional rights is *irrelevant.*" (emphasis added). The central issue is indeed whether constitutional rights have been violated; the procedural consideration that this Court must keep in mind is *when* this violation, if any, became obvious and whether such objection could have been raised at that time. In this case, the Court finds the alleged violation of Plaintiff's constitutional rights arose only after the two previous proceedings. Hence, *res judicata* is inapplicable and not a bar to the instant action.

## D. ABSTENTION & PENDENT JURISDICTION

■ This Court has jurisdiction of this action under 28 U.S.C. § 1343(3), (4), 28 U.S.C. § 1331, 28 U.S.C. § 2201 & 2202. This is a § 1983 action seeking vindication of civil rights guaranteed under the Constitution. Hence, federal question subject matter jurisdiction is present.

The Court also need not abstain because of the claim Plaintiff has filed in Common Pleas Court. Plaintiff has properly filed a motion to stay those proceedings and reserve the constitutional questions which this Court is empowered to hear. Furthermore, the state court action seeks to determine whether Plaintiff is entitled to benefits; this action addresses the anterior question about whether Plaintiff is even entitled as a matter of appeal to be in Common Pleas Court.

■ Abstention by this Court is not warranted in the instant case. *Pullman* abstention does not apply because there is no uncertainty as to the interpretation of ORC § 4141.28 under state law. The Ohio Su-

preme Court has affirmed the meaning of the statute's time limits and notification procedures. *See McCruter v. Board of Review,* 64 Ohio St.2d 277, 415 N.E.2d 259 (1980); *Holmes v. Union Gospel Press,* 64 Ohio St.2d 187, 414 N.E.2d 415 (1980). Nor is there the threat of interfering with the practices and procedures of a highly specialized and technical state administrative structure as in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). While a state's unemployment compensation system may be complex, the ruling of a federal court on an issue of such fundamental constitutional importance as a claimant's right to appeal does not pose the threat to a structure which is exclusively or uniquely the prerogative of the states. Finally, this Court is not asked to stay a state court proceeding as in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); indeed, the decision rendered in this case will either permit the state court action to proceed or be dismissed as being outside plaintiff's right to appeal. This Court's decision not to abstain is consistent with the Sixth Circuit's decision in *Hanna v. Toner,* 630 F.2d 442 (1980); the Court, too, does not wish to see "[t]he exceptions ... swallow the rule if a federal court were required or allowed to close its doors" to an alleged violation of due process rights. *Id.* at 443.

### III.

Having determined that this Court has jurisdiction and need not abstain from proceeding; that the Eleventh Amendment does not immunize the state defendants; and that *res judicata* does not bar the instant action, this Court turns to the merits of the summary judgment motion.

### A. DUE PROCESS CLAIMS

▆ Plaintiff Bennett argues that his due process rights under the 14th Amendment were violated in that judicial review was denied him because he did not receive timely notice of the Board of Review's decision.

This case is decided against a background which has already seen the issue of notice rights of unemployment claimants in Ohio litigated. Another judge, on this district's bench, has already ruled that O.R.C. § 4141.28 is unconstitutional in denying a claimant appeal rights where the claimant received the notice of the adverse decision after the 14-day appeal period of O.R.C. § 4141.28(L) had run. *U.A.W. v. Giles,* 5 Ohio Bar Repts. 300 (N.D.Ohio 1982). The issue before this Court is similar but goes to the broader question of what are the consequences if a claimant receives no notice whatsoever.

This Court finds the reasoning adopted by Magistrate Carr, Western Division of the Northern District of Ohio, in *Giles* persuasive and adopts that opinion in finding O.R.C. 4141.28(O) unconstitutional in the instant case. Without reiterating the entire argument advanced in *Giles,* this Court will state the more salient grounds for its concurrence with the opinion in *Giles* and their applicability to the instant case.

▆ Defendants assert that the due process clause requires only a "meaningful opportunity to be heard" and since Plaintiff has already presented his case before the OBES and the Board of Review, his due process rights were met. What is at issue in this case is not whether the Ohio unemployment compensation system *in toto* satisfies due process or is "excessive" in affording claimants due process rights. Rather, the question is once the state has created a system of appeals and a right to appeal, what obligations does the state have to permit claimants to reasonably exercise that right. It would be a meaningless promise to provide a claimant with several "opportunities to be heard" and then to either deliberately or through a policy premised on an arbitrary occurrence deny him those opportunities. While it is true that Plaintiff may not have an inherent constitutional right to be heard after the Board of Review denied his claim, since Ohio has given him the right to appeal this decision, it must grant him a means within his control to exercise that appeal. *See Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct.

585, 100 L.Ed. 891 (1956); *Robinson v. Beto*, 426 F.2d 797 (5th Cir.1970).

The Ohio Supreme Court has affirmed that the statute at issue here clearly speaks of a claimant's appeal rights ending 30 days after the notice of the Board's decision was mailed. However, as in *U.A.W. v. Giles*, such a mechanism can only be thought to satisfy due process standards if there is a "conclusive presumption that mailing a decision results in its receipt by the claimant." *Giles*, 5 O.B.R. at 303. Whatever system of notice is chosen must be "reasonably certain to inform those affected ... or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

 It is established that in most instances the U.S. mails can be "reasonably calculated" to notify an individual. However, there are inevitably going to be instances when notice is not received, through no fault of either the party posting the item or the party to whom the item is addressed. At one time or another, both the Government and members of the public will become victims of the vagaries of this country's postal system (which has been the subject of anecdotes about letters being lost and finally arriving albeit years late.) The government would be draconian to deny an individual a property right in unemployment benefits, *see Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), without any consideration for the arbitrariness of the non-receipt of that notice. This presumption of receipt upon mailing is at best highly formalistic and at worst totally unrealistic. Admittedly, in the case of recipients of unemployment benefits, it may be difficult for a state agency to determine the actual current address for the party because of changes in

residence, etc., conditioned by the loss of income. Nonetheless, a claimant has a right to personal notice. *See Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 727, 24 L.Ed. 565 (1877).

This Court like the one in *Giles* is reluctant to demand that all notices of denial of benefits be sent by certified mail or personal service, *Giles*, 5 Ohio Bar Repts. at 308,[8] but believes at the very least the State should provide a "good cause exception" to claimants who can demonstrate that they did not receive timely notice. *See Giles*, 5 Ohio Bar Repts. at 309. Of course, the burden of proof for such a showing could be placed on the claimant who would also have to demonstrate that he had some reason to believe he was entitled to continue receiving such benefits and that in the absence of such signs he had made diligent efforts to find out the status of his case. Essentially, such a standard maintains the current principle that although an agency by proving mailing establishes a presumption of receipt, but at the same time it permits a claimant an opportunity to rebut that presumption. *See Giles*, 5 Ohio Bar Repts. at 311.

This Court believes that had the state of Ohio had such a good-faith exception, Plaintiff in the instant case would have been able to meet his burden of showing non-receipt. The primary fact which can legitimately be viewed as leading Plaintiff to reasonably believe that he had not been denied benefits by the Board was his continuous receipt of benefit checks between November 24, 1982 (the date the Board denied Bennett's appeal) and January 22, 1983 (the date he received the overpayment notice from the O.B.E.S.) It is understandable that an individual who received over $3,300 in the course of two months would be shocked and surprised to learn that he was not rightfully entitled to such money; it is reasonable for a claimant, especially

---

8. While this Court does not at this time require certified mail or personal service, the state may determine that over the long run the additional costs of such alternative means of delivering notice are justified in that they promote the certainty that notice has been received; at the very least such methods provide a means of establishing that the state made its best efforts to notify the particular claimant. *See Giles*, 5 Ohio Bar Repts. at 310–11.

one whose action is under review, to assume the state is keeping a watchful eye over such a large payment of benefits. There is also no evidence on the record that Plaintiff failed to pursue his claim *once he learned* that his appeal to the Board had been denied. Within 30 days of the notification of overpayment, Plaintiff had filed actions in both the Cuyahoga County Commons Pleas Court and federal court.

## B. EQUAL PROTECTION CLAUSE

Having determined that Ohio Revised Code § 4141.28(O) violates the due process clause of the Fourteenth Amendment, this Court finds it unnecessary to rule on the issue of whether O.R.C. § 4141.28(O) violates the equal protection clause of the Fourteenth Amendment.

### IV.

In light of this finding of a constitutional violation, this Court as a matter of law denies Defendants' Motion for Summary Judgment and grants Plaintiffs' Cross-Motion for Summary Judgment. The Plaintiffs are entitled to the following declaratory and injunctive relief:

1. That O.R.C. § 4141.28(O) violates the due process clause of the Fourteenth Amendment and is therefore void;

2. That the defendants are hereby permanently enjoined and restrained from denying unemployment benefit claimants an appeal in Common Pleas Court without providing a hearing for claimants to establish non-receipt of such notice as a "good faith" reason for not timely filing such an appeal;

3. That the Stay of Plaintiff's action in Common Pleas Court be removed and that Plaintiff may proceed to appeal his denial of benefits on the merits in that action.

IT IS SO ORDERED.