630 F.2d 442
 Jonathan HANNA et al., Plaintiffs-Appellants,
v.
John J. TONER et al., Defendants-Appellees.
 No. 79-3476.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 15, 1980.
Decided Sept. 2, 1980.
 
 Carolyn L. Carter, Margaret L. Terry, Cleveland, Ohio, for plaintiffs-appellants.
 Geraldine Frank, Harry Swanger, National Juvenile Law Center, Inc., Youth Legal Assistance Project, St. Louis, Mo., for amici curiae Nat. Juvenile.
 Jeffrey P. Posner, Asst. Pros. Atty., Cleveland, Ohio, for Toner, Wierzbinski, and Kelley.
 George V. McCullough, Rocky River, Ohio, for Philips.
 Before EDWARDS, Chief Judge, and KEITH and BROWN, Circuit Judges.
 EDWARDS, Chief Judge.
 
 
 1
 The federal courts were created to vindicate the constitution and laws of the United States, Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946); Marbury v. Madison, 1 Cranch 137, 163, 177, 2 L.Ed. 60 (1803). The rule, of course, is that their doors are open to complaints of violation of such laws. Exceptions to that rule are few and narrowly drawn. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1975); County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89, 79 S.Ct. 1060, 1062-1063, 3 L.Ed.2d 1163 (1959). The exceptions would swallow the rule if a federal court were required or allowed to close its doors to a complaint charging, as here, abuse of the fundamental constitutional rights of children in a county detention home.
 
 
 2
 The complaint in this case was filed under 42 U.S.C. § 1983 of the Civil Rights Act of 1871 against individuals who have administrative responsibility for the operation of the Cuyahoga County Juvenile Detention Home. Jurisdiction is alleged under 28 U.S.C. §§ 1441 and 1343 (1976).
 
 
 3
 The named plaintiffs are four young people, represented by next of kin, who are alleged to have been subjected to physical abuse, lengthy solitary confinement inflicted without hearing, "inhumane" conditions and deprivation of education in the Detention Home all in violation of Amendments I, IV, VIII and XIV of the federal Constitution. The suit is brought as a class action on behalf of all young persons similarly confined; the plaintiffs sought class certification, injunctive relief and compensatory monetary damages. None of the allegations of this complaint have been heard or adjudicated and, of course, we pass no judgment upon them. After a hearing on the plaintiffs' motion for class certification, the complaint was dismissed without prejudice sua sponte by the District Judge in reliance upon a rarely used abstention doctrine which originated in the case of Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).
 
 
 4
 In Burford, the Supreme Court found an overriding state concern and superior competence in the courts of Texas to deal with a complex state regulatory scheme for controlling the drilling of oil wells into a general underground oil pool. Since we find the Burford doctrine inapplicable to the facts of this case, we reverse and remand for trial on the merits.
 
 
 5
 Settled federal law holds that allegations of violations of the U. S. Constitution in state and local prisons and jails are subject to the jurisdiction of the federal courts. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); McNeese v. Board of Education, 373 U.S. 668, 82 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1978); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In Martinez, supra, the U. S. Supreme Court said:
 
 
 6
 "(A) policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights."
 
 
 7
 416 U.S. at 405-406, 94 S.Ct. at 1807.
 
 
 8
 This court has squarely held that abstention from hearing claims of institutional violation of rights guaranteed by the U. S. Constitution is inappropriate and federal courts must hear federal constitutional claims. In Jones v. Metzger, 456 F.2d 854, 855 (1972), this court said:
 
 
 9
 "With respect to the first argument, we recognize that courts, especially federal courts, should be reluctant to become involved in the internal administration of state prisons. However, we are impressed that the district court very carefully considered the delicate balance of federal-state relations, as well as the relationship between the judicial and executive branches of our system of government, before deciding to intervene. The court stated that
 
 
 10
 (i)t is well-settled that the administration of state detention facilities is a state function. Federal courts have a natural reluctance to interfere with such administration and will intercede only where paramount federal constitutional or statutory rights supervene. (Citations omitted.) Prisoners do not lose all of their constitutional rights when they enter a penal institution. Rather they retain all of their constitutional rights except for those which must be impinged upon for security or rehabilitative purposes. (Citations omitted.)"
 
 
 11
 Many federal cases have recognized that federal courts have exercised and should exercise jurisdiction over complaints alleging federal constitutional abuse in state or local institutions housing juveniles charged with or guilty of criminal violations. McRedmond v. Wilson, 533 F.2d 757 (2nd Cir. 1976); Nelson v. Heyne, 491 F.2d 352 (7th Cir. 1974), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); Harris v. Bell, 402 F.Supp. 469 (W.D.Mo.1975); Inmates of Boys' Training School v. Affleck, 346 F.Supp. 1354 (D.R.I.1972).
 
 
 12
 The highest authority on federal law has, however, written the text on the distinctions between and the limited circumstances which make abstention proper under (a) the Pullman doctrine, Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), (b) the Burford doctrine, Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and (c) the Younger doctrine, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
 
 
 13
 In Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975), the U. S. Supreme Court discussed our instant problem thoroughly and in authoritative language:
 
 
 14
 "Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.' County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). '(I)t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.' Alabama Pub. Serv. Comm'n v. Southern R. Co., 341 U.S. 341, 361, 71 S.Ct. 762, 774, 95 L.Ed. 1002 (1951) (Frankfurter, J., concurring in result). Our decisions have confined the circumstances appropriate for abstention to three general categories.
 
 
 15
 "(a) Abstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' County of Allegheny v. Frank Mashuda Co., supra, 360 U.S. at 189, 79 S.Ct. at 1063. See, e. g., Lake Carriers Ass'n v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); United Gas Pipeline Co. v. Ideal Cement Co., 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962); Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).
 
 
 16
 "(b) Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), for example, involved such a question. In particular, the concern there was with the scope of the eminent domain power of municipalities under state law. See also Kaiser Steel Corp. v. W. S. Ranch Co., 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968); Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610 (1933). In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. In Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), for example, the Court held that a suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil wells should have been dismissed by the District Court. The reasonableness of the permit in that case was not of transcendent importance, but review of reasonableness by the federal courts in that and future cases, where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields. See also Alabama Pub. Serv. Comm'n v. Southern R. Co., supra.
 
 
 17
 "(c) Finally, abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films, Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); or collection of state taxes, Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943)." (footnote omitted).
 
 
 18
 We find no basis in our present case for abstention. Abstention is clearly not justified by the Pullman doctrine. Neither the defendants nor the District Judge has relied upon it and no one has pointed to any interpretation by the state's highest court which might avoid a federal constitutional adjudication. The same conclusions may be reached in relation to the Younger v. Harris doctrine. The instant case represents no interference or intervention in state judicial processes criminal or otherwise.
 
 
 19
 Defendants and the District Judge specifically relied upon the Burford doctrine. We do not, however, deal here with any complex state scheme for allocation of property rights as to which the federal courts might lack expertise. Indeed, plaintiffs' claims of federal constitutional violation represent the exact sort of disputes over citizens rights with which the federal courts were created to deal. The Supreme Court has recognized clearly that abstention merely to avoid conflict with a state policy is not appropriate. In Zablocki v. Redhail, 434 U.S. 374, 380 n.5, 98 S.Ct. 673, 678 n.5, 54 L.Ed.2d 618 (1977), the Supreme Court said: "there is of course no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy."
 
 
 20
 The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.