**Mitchell B. TUCKER**

v.

**Jack CALLAHAN, et al.**

No. 3–86–0725.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 26, 1987.

---

Bob Lynch, Jr., Gilbert & Milom, Nashville, Tenn., William W. Gibson, Graham Matherne, for Tucker.

Charles N. Griffith, Waverly, Tenn., for Callahan, Glasgow, Brewer and City of New Johnsonville.

Darrell G. Townsend, Howell, Fisher, Branham & North, Nashville, Tenn., for Springer.

## MEMORANDUM

WISEMAN, Chief Judge.

The defendant has filed a motion asking this Court to abstain from exercising jurisdiction by dismissing or, in the alternative, staying this action on the grounds of *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The issue before the Court is whether or not to decline to exercise federal jurisdiction over plaintiff's 42 U.S.C. § 1983 claim.

### Facts

The plaintiff, Mitchell Tucker, states that he was assaulted and severely injured in the Harbour Inn parking lot in New Johnsonville, Tennessee. Plaintiff alleges that Wilburn Springer, a New Johnsonville police officer, was on duty at the time, witnessed the assault, and failed to intervene or to render medical assistance to Mr. Tucker. Plaintiff has filed suit in this Court against Officer Springer, the City of New Johnsonville, and the city's Mayor, Police Commissioner and Chief of Police alleging that they violated his rights under 42 U.S.C. § 1983. His claim is exclusively federal in nature and requires no exercise of the Court's pendent jurisdiction.

Plaintiff filed suit in this Court on August 19, 1986. On the same day he also filed suit in state court seeking recovery against the above defendants under the Tennessee Constitution and Tennessee Code Annotated § 38-3-103. In addition, the state suit seeks recovery against two additional defendants—the Harbour Inn, under a claim of negligence, and the alleged assailant under a claim of civil assault and battery. Although the state suit arises out of the same incident, it relies solely on state constitutional and state tort law.

### Abstention Doctrine

Abstention is a judicially created doctrine.

The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction,

is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to State court would clearly serve an important countervailing interest.

*Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244, 47 L.Ed.2d at 495–96 (citation omitted). The Supreme Court has articulated four categories in which it may be appropriate for a District Court to decline to exercise federal jurisdiction.

A federal court should abstain when a state court's resolution of unsettled state law questions may make consideration of the federal constitutional question unnecessary. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In *Pullman,* the Commission had issued an order which was, probably, violative of state law and of the United States Constitution. The Supreme Court stayed the federal action until the state had an opportunity to construe the statute. Here, there is no question of state law that would moot consideration of the federal constitutional issue presented.

Second, federal courts may abstain when exercise of federal jurisdiction would undermine or conflict with a state's attempt to "[provide] a unified method for the formation of policy" on issues of public concern. *Burford v. Sun Oil Co.*, 319 U.S. 315, 332, 63 S.Ct. 1098, 1106, 87 L.Ed. 1424 (1943). In *Burford,* a state commission was primarily responsible for regulating oil and gas fields. Because state courts provided adequate judicial review and conflicts with federal courts would undermine state policy, the Supreme Court held that the federal court should abstain from exercising jurisdiction. No questions affecting state policy of the type raised in *Burford* are presented in this case.

Abstention may be appropriate if action by the federal courts unduly interferes with a state's right to enforce state laws in its own courts. This was first applied to federal interference with pending state criminal proceedings in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669. *Younger* abstentions may also apply in civil cases if the state interest at issue is of sufficient importance to require its application. *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). *Pennzoil Co. v. Texaco, Inc.,* —— U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). This case presents no issue of interference with state law.

The final category in which a court may decline to exercise federal jurisdiction is one of "concurrent jurisdictions, either by federal courts, or by state and federal courts." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246, 47 L.Ed.2d at 498. The *Colorado River* doctrine is guided by principles that "rest on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (citations omitted).

*Colorado River* concerned the adjudication of federal water rights under state law. Congress had passed the McCarran Amendment, which stated that the United States would consent to be a defendant in cases concerning the "adjudication" or "administration" of water rights. *Id.* at 802–03, 96 S.Ct. at 1239, 47 L.Ed.2d at 489. The State of Colorado had established an extensive and comprehensive state forum for the "allocation" and "adjudication" of water rights. *Id.* at 804, 96 S.Ct. at 1239, 47 L.Ed.2d at 490.

The federal government filed suit in United States District Court for the District of Colorado seeking determination of government water rights. The District Court abstained in deference to state court proceedings. The Supreme Court held that although the McCarran Amendment did not restrict federal jurisdiction to adjudicate federal water rights, the District Court had appropriately dismissed the case.

The Court held that when concurrent state-federal jurisdiction exists, a federal court may defer to a concurrent state proceeding based on principles of "wise judicial administration" if "exceptional circumstances" exist. *Id.* at 818, 96 S.Ct. at 1246,

47 L.Ed.2d at 498. The Court emphasized the "unflagging obligation" of the federal courts to exercise their jurisdiction and stated that, therefore, appropriate circumstances for dismissal on these grounds "are considerably more limited than the circumstances appropriate for abstention." [1] *Id.* "Only the clearest of justifications will warrant dismissal." *Id.* at 819, 96 S.Ct. at 1247, 47 L.Ed.2d at 499.

The most persuasive factor that weighed against concurrent federal proceedings in *Colorado River* was that the purpose of the McCarran Amendment was to avoid "piecemeal adjudication of water rights" by deferring to "comprehensive state systems for [the] adjudication of [those] rights." *Id.* Because Colorado had an available, comprehensive state system to adjudicate water rights it would be inconsistent with the policy of the McCarran Amendment to simultaneously litigate those rights in federal court.[2]

The Supreme Court applied the *Colorado River* standard to overturn a writ of mandamus to the district court in *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). There was no majority opinion, but in the plurality opinion, Justice Rehnquist stated that although a pending state action does not bar litigation on the same matter in federal court, the federal court is not obligated to exercise its jurisdiction. *Id.* at 662, 98 S.Ct. at 2557, 57 L.Ed.2d at 512. The "decision in such circumstances is largely committed to the discretion of the district court ... even when matters of substantive federal law are involved in the case." *Id.* Justice Blackmun concurred in the judgment only

because the District Court's order was issued prior to the *Colorado River* decision. He stated that the case should be remanded to be reconsidered in light of *Colorado River*. *Id.* at 667, 98 S.Ct. at 2559, 57 L.Ed.2d 515.

The Supreme Court next extended the *Colorado River* standard to apply to stays as well as dismissals. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). At issue was whether or not the District Court had properly stayed a federal claim under the United States Arbitration Act, 9 U.S.C. § 4, pending the resolution of a concurrent state court proceeding on the same issue. The Court held the District Court had abused its discretion in granting the stay.

The Court stated that *Will* did not modify the standard enunciated in *Colorado River*, and that the "exceptional circumstances" test was still controlling. *Id.* 460 U.S. at 19, 103 S.Ct. at 938, 74 L.Ed.2d at 782. The Court then listed two additional factors from *Will* that weigh against declining jurisdiction, "the fact that federal law provides the rule of decision on the merits," and "the probable inadequacy of the state-court proceeding to protect [a party's] rights." *Id.* at 22, 26, 103 S.Ct. at 940, 942, 74 L.Ed.2d at 784, 786. Although the state and federal courts had concurrent jurisdiction in *Moses Cone*, the Supreme Court found that federal issues were involved, and "the presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction. *Id.* at 24, 26, 103 S.Ct. at 941, 942, 74 L.Ed.2d at 785, 786.[3]

1. The Court listed four factors to be considered when deferring to concurrent state court proceedings under *Colorado River*. (1) Which court first exercises jurisdiction over the res; (2) "inconvenience of the federal forum;" (3) "desirability of avoiding piecemeal litigation;" and (4) "the order in which jurisdiction was obtained." "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Id.* at 818–19, 96 S.Ct. at 1247, 47 L.Ed.2d at 499.

2. Additional factors the court found significant were: (a) the apparent absence of any proceed-

ings in the District Court other than the filing of the complaint prior to the motion to dismiss; (b) the extensive involvement of state water rights occasioned by this suit naming 1,000 defendants; (c) the 300–mile distance between the District Court in Denver and the state court in Division 7; and the existing participation by the government in Division 4, 5, and 6 proceedings." *Id.* 424 U.S. at 820, 96 S.Ct. at 1247, 47 L.Ed.2d at 500.

3. In addition to the federal law factor, the court found several other factors supporting the exercise of federal jurisdiction: (a) piecemeal litigation would not be avoided by staying the federal action. *Id.* at 20, 103 S.Ct. at 939, 74 L.Ed.2d at

Turning to the case at hand, we must determine whether exceptional circumstances exist that would warrant a dismissal or stay of federal proceedings under *Colorado River*. To determine whether this is appropriate we must first look to the Congressional intent behind 42 U.S.C. § 1983.

### Section 1983

Defendant claims that because civil rights claims under section 1983 can now be heard in Tennessee state courts,[4] in the interest of "wise judicial administration," this court should dismiss or stay the federal claim pending the resolution of the state court action. Because there is now concurrent state-federal jurisdiction in section 1983 claims in Tennessee, we must determine if federal deference to state action would be appropriate under *Colorado River*.

42 U.S.C. § 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 was originally part of the Ku Klux Act of 1871 enacted to facilitate enforcement of the 14th Amendment.[5] *Monroe v. Pape*, 365 U.S. 167, 170, 81 S.Ct. 473, 475, 5 L.Ed.2d 492, 496 (1961). The purpose of section 1983 was to provide a "supplemental" federal remedy for violation of civil rights where state law was inadequate, or where "though adequate in theory, was not available in practice." *Id.* at 183, 174, 81 S.Ct. at 482, 477, 5 L.Ed.2d at 503, 498.[6] The troubles and turmoil of the Reconstruction era no longer plague our nation, but section 1983 remains a bulwark against those earlier, tragic days and a vehicle for the evolving expectations and standards of a free society.

> Much has changed since the Civil Rights Acts were passed. It no longer is proper to assume that a state court will not act to prevent a federal constitutional deprivation or that a state judge will be implicated in that deprivation. We remain steadfast in our conclusion, nevertheless, that Congress intended § 1983 to be an independent protection for federal rights.

*Pulliam v. Allen*, 466 U.S. 522, 541, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565, 579 (1984).

Consequently, a number of courts have held that the obligation to exercise federal jurisdiction is "particularly weighty" when a party is asserting his or her "right to relief under § 1983." *Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir.1980).[7] A plaintiff's access to a federal forum for section 1983 claims is of particular concern because state court judgments can have a res judicata effect, barring subsequent litigation in federal court.

### Res Judicata

The Supreme Court has held that previous state court judgments may have a preclusive effect on section 1983 claims

783, (b) the federal suit was filed first and had proceeded much further than the state suit, so staying the federal action frustrated the intent of the Arbitration Act—to get the parties to arbitration as quickly as possible. *Id.* at 22, 103 S.Ct. at 940, 74 L.Ed.2d at 784, (c) probable inadequacy of the state action to adequately protect the defendant's rights. *Id.* at 26, 103 S.Ct. at 942, 74 L.Ed.2d at 786.

**4.** *Poling v. Goins*, 713 S.W.2d 305 (Tenn.1986).

**5.** 42 U.S.C. § 1983 was formerly known as Revised Statute § 1979, which is the term the Supreme Court uses in *Monroe v. Pape*.

**6.** For a discussion of the validity of presuming parity between state and federal courts see Neuborne, *The Myth of Parity*, 70 Harv.L.R. 1105 (1977).

**7.** *See also, Signad Inc. v. City of Sugar Land*, 753 F.2d 1338 (5th Cir.1985) (dismissal of section 1983 claim under *Colorado River* improper). *Caplinger v. Carter*, 541 F.Supp. 716 (D.Kan. 1982).

brought in federal court.[8] The preclusion applies not only to section 1983 claims the litigants raised, but also to section 1983 claims they could have, but did not raise. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). "The federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Id.* at 81, 104 S.Ct. at 896, 79 L.Ed.2d at 61.

■ Under Tennessee law "res judicata bars consideration of all claims that were *or reasonably could have been litigated* by [the plaintiff] in the state court action." *Whitfield v. City of Knoxville,* 756 F.2d 455, 459 (6th Cir.1985) (emphasis in the original). Therefore, either a stay or dismissal under *Colorado River* and subsequent litigation of the state claim could potentially preclude federal litigation under section 1983, denying plaintiffs the access to a federal forum that section 1983 was created to provide.[9]

*Conclusion*

■ In deciding whether extraordinary circumstances exist that justify dismissal or stay under *Colorado River*, a court must consider several factors. No one factor is determinative and all are to be balanced in light of the circumstances, with the exercise of federal jurisdiction heavily weighted. *Moses Cone, supra,* 460 U.S. at 16, 103 S.Ct. at 937, 74 L.Ed.2d at 780. The highest duty of the federal courts is to interpret and enforce federal law. It is essential to Our Federalism that each enti-

ty fulfill its obligations to a nation governed by laws.

We emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court, rather the test is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.

*Moses Cone, supra,* at 25–26, 103 S.Ct. at 942, 74 L.Ed.2d at 786 (emphasis in the original). The defendant claims that this Court should dismiss or stay the federal action in order to avoid piecemeal litigation arising from one series of acts. Although some duplicative litigation may occur, it is the "unavoidable price of preserving access to federal relief that § 1983 assures," *Tovar, supra* at 1293. *See Caplinger v. Carter,* 541 F.Supp. 716 (D.Kansas 1982). Duplication is the usual, not the exceptional circumstance in section 1983 litigation. Although judicial efficiency is to be desired, it is not to be worshipped. Judicial efficiency alone cannot outweigh the right of access to federal court assured by section 1983. *Compare Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1247, 47 L.Ed.2d at 499 (the purpose of the McCarran amendment was to avoid piecemeal litigation) *with Monroe v. Pape,* 365 U.S. at 173, 81 S.Ct. at 477, 5 L.Ed.2d at 498 (the purpose of section 1983 was to provide access to a federal forum).

The defendant also argues that dismissal is proper because the state forum is "more convenient" to the parties. This is the federal court with jurisdiction over where the claim arose, and it is not unreasonably distant from New Johnsonville.[10]

**8.** The Court has held that this is true for both issue preclusion (*Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) and claim preclusion (*Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Accord, *Gregory v. Drury,* 809 F.2d 249 (5th Cir.1987) *petition for cert. filed,* 55 U.S.L.W. 3762 (U.S. May 12, 1987) (No. 86–1673).

**9.** The preclusive effect of a state court judgment in a federal court action is that preclusive effect which the state court would give its judgment. *Migra,* 465 U.S. at 84, 104 S.Ct. at 897, 79

L.Ed.2d at 64. The question of state law of whether Tennessee would preclude section 1983 actions that could have been brought in a state court tort action but were brought in a later action after the state court judgment is not before us. The court expresses no opinion nor does it make an *Erie*-educated conjecture about how the Tennessee courts or legislature would view the question.

**10.** The federal district court in *Colorado River* was over 300 miles from the state court. *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1247, 47

There is no res involved and the state and federal lawsuits were filed the same day. Therefore, the factors of jurisdiction acquisition are irrelevant in this case.

The purpose of section 1983 was to provide a separate federal remedy for plaintiffs' civil rights claims. Dismissal or stay under these circumstances would undermine and thwart the result intended by the passage of the legislation. This is of particular concern because res judicata could effectively preclude plaintiffs from being able to avail themselves of the federal forum section 1983 provides. *See* note 8 *supra.*

In light of these circumstances, because of the presence of federal law issues, and the lack of persuasive factors to the contrary, the Court finds that no exceptional circumstances exist that would justify a dismissal or stay under *Colorado River* in this case.

L.Ed.2d at 500. This Court is only 65 miles    from the state court in Waverly, Tennessee.