**Bettye GLOVER**

v.

**CITY OF PORTLAND, TENNESSEE.**

**No. 3–87–0645.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 16, 1987.

Paul Davidson, David F. Gore, Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

Plaintiff Bettye Glover, an Alderman of the City of Portland, has sued the City, the Mayor, and several Aldermen[1] pursuant to 42 U.S.C. § 1983 for alleged deprivations of her Constitutional rights under the Fourteenth Amendment. Glover's original suit against all of the defendants was filed in state court on March 3, 1986 and amended on January 11, 1987; she nonsuited one of those defendants, the City of Portland, and reinstated her claim against it in federal court in August, 1987.[2] The issue before the District Court is whether the plaintiff's section 1983 claim against the City should be dismissed or stayed under the principles set forth by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), *reh'g denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976) and *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). For the reasons given below, the Court grants the defendant City's motion and dismisses Glover's suit against the City.

### I.

Bettye Glover, an Alderman for the City of Portland, was removed from that position in 1986 because of conversations with a police officer in which she suggested that elected officials and prominent citizens of Portland had taken bribes and trafficked in drugs. On the advice of Portland's City Attorney,[3] the Mayor and Aldermen held a

Mary Martin Schaffner, Nashville, Tenn., for plaintiff.

1. Individual defendants include Mayor William J. Rawls and Aldermen Lewis Dunbar, Earl Pearson, Ron Renfro, Melvin Minnis, Robert Shannon, and Robert Wilkinson. *See* Order, *Glover v. City of Portland* (No. 3541–C) (attached as Exhibit 3 to Plaintiff's Response to Defendant's Motion to Dismiss or to Stay) [hereinafter "Plaintiff's Response"].

2. *See* Petition for Certiorari and Supersedeas, *Glover v. City of Portland* (No. 3541–C) (attached as Exhibit A to Defendant's Memorandum in

Support of Motion to Dismiss or to Stay) [hereinafter "Defendant's Memorandum"]; Amendment to Petition (attached as Exhibit B to Defendant's Memorandum); Complaint, *Glover v. City of Portland* (No. 3–87–0645) (filed August 12, 1987).

3. A motion for summary judgment in favor of City Attorney Norman Lane was granted in Circuit Court on August 13, 1987; he is no longer a party to the lawsuit in state or federal court. *See* Order, *Glover v. City of Portland* (No. 3541–

hearing on the matter before the City Council on January 30, 1986. They voted unanimously to remove Glover from office for "grave misconduct" under Article III, Section 14 of the City Charter.[4]

On March 3, 1986, Glover filed a Petition for Certiorari and Supersedeas in Sumner County Circuit Court and sought reinstatement.[5] The Circuit Court granted Glover's petition on May 5, 1987.[6] This decision is currently on appeal before the Tennessee Supreme Court.

On January 11, 1987, Glover amended her petition to include complaints against the City of Portland, the Mayor, the Aldermen, and the City Attorney under 42 U.S.C. § 1983.[7] Glover filed an identical complaint in federal court 15 days [8] later but voluntarily dismissed it on March 3, 1987.

After Glover amended her petition and the defendants filed answers, proceedings commenced on the federal claims in state court.[9] City Attorney Norman Lane moved that Glover be examined by a psychiatrist. Glover submitted interrogatories and requests for admission on the defendants. Discovery conferences were held. After a

hearing before the Circuit Court, the City Attorney's motion for summary judgment was granted.[10] For eight months, Glover pressed her section 1983 claims against all of the defendants in state court.

Progress in Glover's suit halted abruptly on August 10, 1987, when she voluntarily dismissed her claims against one of the defendants, the City of Portland, and filed that portion of her lawsuit for a second time in federal court.[11] As a result, Glover has split one lawsuit between two courts: the Circuit Court retains Glover's section 1983 claims against the Mayor and Aldermen; Glover's section 1983 claims against the City are now pending in this Court. On September 8, 1987, the City moved to dismiss or stay the action in federal court.

## II.

■ This is the plaintiff's second appearance before this Court on these facts. Glover filed suit against all of the defendants in state court on her section 1983 claims, nonsuited them to file suit against all the defendants in this Court, and then nonsuit-

---

C) (attached as Exhibit E to Defendant's Memorandum).

4. Article III, Section 14 of the charter of the City of Portland provides, in relevant part:

[T]he Mayor or any Alderman may be removed from office by the City Council for any crime or misdemeanor in office or for grave misconduct showing unfitness for public service, or for permanent disability, by a majority vote of the other members of the City Council voting for such removal.

5. *See* Exhibit A, Defendant's Memorandum.

6. *See* Memorandum Opinion, *Glover v. City of Portland* (No. 3541–C) (attached as Exhibit D to Defendant's Memorandum).

7. *See* Exhibit B, Defendant's Memorandum.

8. Complaint, *Glover v. City of Portland* (No. 3–87–0060) (attached as Exhibit C to Defendant's Memorandum).

9. *See* Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss or Stay [hereinafter "Defendant's Reply"] at 5. Incredibly, the parties disagree about how much progress has been made on the amended petition in the Circuit Court. Glover alleges that no proceedings have taken place against the City of Portland in the section 1983 action. *See* Plaintiff's

Response at 7. The City's reply brief responds to this allegation with a laundry list of proceedings in the Circuit Court. *See* Defendant's Reply at 5. This Court has reviewed the docket sheet of the Circuit Court Clerk: a plethora of entries appear after January 11, 1987, when Glover first amended the petition to include the section 1983 claims, and after May 7, 1987, when Glover's petition under state law was granted. Many of these entries confirm the narrative in Defendant's Reply Brief. Furthermore, all of these proceedings took place while the City was a defendant in the state court suit. Hence, this Court finds the plaintiff's allegation that there have been no proceedings on the federal claims in state court to be without merit.

10. *See* Exhibit E, Defendant's Memorandum.

11. Complaint, *Glover v. City of Portland* (No. 3-87-0645). Although Glover nonsuited the City in state court, her complaint retained claims against the Mayor and Aldermen in their official capacities. Under *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), claims against City employees in their official capacities are claims against the City itself. Glover voluntarily dismissed these claims on September 25, 1987, after defendant's motion to dismiss or stay was filed. *See* Exhibit 3, Plaintiff's Response.

ed her claims again to consolidate them in state court. Now, after months of proceedings on the federal issues in state court, the plaintiff appears once more before this Court and seeks to split her federal claims between state and federal forums. The issue before this Court is whether the defendant's motion to dismiss or stay the action against the City in federal court should be granted under the Supreme Court's admonition to "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. at 15, 103 S.Ct. at 936, *citing Colorado River Water Conservation District v. United States*, 424 U.S. at 817, 96 S.Ct. at 1246. This case presents a close question: whether a case that seems otherwise suited for application of the *Colorado River* doctrine should nonetheless be decided by the district court solely because the claims arise under 42 U.S.C. § 1983. Because the facts of this particular case fall squarely within the parameters of the *Colorado River* doctrine and because the state court is a more than adequate vehicle for resolution of the federal issue, the defendant's motion to dismiss is granted. *See Cone*, 460 U.S. at 28, 103 S.Ct. at 943.

### III.

In *Colorado River*, the Supreme Court described an approach to cases in which traditional abstention doctrines [12] do not apply but in which it is nonetheless appropriate to dismiss or to stay proceedings in federal court. Unlike abstention, a principle grounded in considerations of comity or in the desire to avoid unnecessary decision of Constitutional questions, the *Colorado River* doctrine concerns the wise administration of judicial resources.[13] Abstention, despite the weighty rationales that support it, is an extraordinary doctrine, a narrow exception to the duty of a federal court to hear cases properly before it. *See Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244, *citing County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163, 1166 (1959). Only in exceptional circumstances where the order to repair to State court will serve an important countervailing interest is abstention appropriate. *See id.* The *Colorado River* doctrine, which relies on less profound considerations, is applied yet more narrowly.[14] Nevertheless, exceptional circumstances may permit stay or dismissal even though the federal court has the power to hear the case and even though traditional abstention doctrines do not apply.

[O]ur task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional"

---

**12.** In *Colorado River*, the Supreme Court discussed three times abstention may be appropriate: (1) when the case presents a federal constitutional issue that might be mooted or presented in a different posture by state court determination of pertinent state law, *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); (2) when difficult questions of state law arise such that a federal court's decision could disrupt state efforts to establish a coherent policy on matters of substantial public concern, *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); (3) when, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction is invoked to restrain state criminal proceedings, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See Colorado River*, 424 U.S. at 813–817, 96 S.Ct. at 1244–1246.

**13.** *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. Technically, the *Colorado River* doctrine

is not one of the three abstention doctrines described by the Supreme Court, although it is often referred to as "Colorado River abstention." *See, e.g.,* M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 12.11 (1986) [hereinafter "Schwartz"].

**14.** Given the virtually unflagging obligation of federal courts to exercise the jurisdiction given them, *see England v. Medical Examiners*, 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440, 444–45 (1964), and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246.

circumstances, the "clearest of justifications," to justify the *surrender* of that jurisdiction.

*Cone*, 460 U.S. at 25–26, 103 S.Ct. at 941–942. When an action is pending in state court on the same matter as that in federal court, however, the district court is under no compulsion to exercise its jurisdiction where the controversy may be settled more expeditiously in the state court. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662–663, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504, 512 (1978). This is true even when matters of substantive federal law are involved in the case. *Will*, 437 U.S. at 664, 98 S.Ct. at 2558. The decision is committed to the carefully considered judgment of the district court. *Id.* at 663, 98 S.Ct. at 2557, *citing Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246.

■ The Supreme Court has provided guidance to federal trial courts by describing factors to consider in deciding when surrender of federal jurisdiction is justified. These factors are not intended as a mechanical checklist but as part of a balancing test that is weighted, as are all abstention decisions, in favor of exercising jurisdiction. *See Cone*, 460 U.S. at 16, 103 S.Ct. at 937. These considerations include:

(1) the inconvenience of the federal forum;

(2) the avoidance of piecemeal litigation;

(3) the order in which jurisdiction was obtained in the concurrent forums and the progress of the two suits in state and federal court;

(4) the vexations and reactive nature of the lawsuits; and

(5) whether federal law determines the issues at stake.[15]

Only the clearest of justifications will warrant stay or dismissal. To grant the motion, the district court must be satisfied that the state court is an adequate vehicle for the complete and prompt resolution of all issues between the parties. *See Cone*, 460 U.S. at 28, 103 S.Ct. at 943. In this regard, a stay is considered as powerful a tool of the trial court as dismissal. *Id.* at 27–28, 103 S.Ct. at 942–943.

## IV.

The plaintiff gives two reasons why the Court should not stay or dismiss her section 1983 claim against the City: (1) that the two lawsuits no longer involve identical parties and therefore are not parallel cases subject to the *Colorado River* doctrine; and (2) that the federal forum has an obligation to hear all claims arising under 42 U.S.C. § 1983. The defendant argues that the claims in state and federal court are sufficiently parallel in underlying allegations, issues of law, and requested relief, although the styles of the cases are no longer identical. The defendant further argues that the Court should dismiss or stay the section 1983 action because: (1) the federal forum is geographically inconvenient; (2) refusal to dismiss or stay will result in piecemeal litigation; (3) proceedings against the City under section 1983 were initiated in state court and much progress has been made there; and (4) the plaintiff's complaint is a vexatious overreaction to an adverse ruling on a motion for summary judgment in state court. The defendant claims that the plaintiff cannot prevail solely because her action arises under federal law when she initiated suit against this defendant in state court and continues to press her section 1983 claims against other defendants in that forum. This case presents a difficult question for

---

**15.** *Colorado River* and its progeny have shaped the factors listed here. The original doctrine considered what court first obtained jurisdiction over property in an *in rem* action; the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. In *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court also considered whether federal law provided the rule of decision on the merits and the relative progress of the two suits in each court. *See id.* at 21–26, 103 S.Ct. at 939–942. In a footnote, the Court observed that if the federal suit is reactive or vexatious, this might support application of the *Colorado River* doctrine as well: the Court did not rely on that reasoning to decide the case, however. *See id.*, at 18, n. 20, 103 S.Ct. at 938 n. 20.

this Court, which must balance persuasive factors supporting *Colorado River* dismissal against its obligation to hear cases under section 1983.

## V.

The plaintiff alleges a deprivation of her Constitutional rights under color of state law when the defendants removed her from her position as Alderman. In state court, Glover has sued the City as well as the Mayor and Aldermen in their official capacities; she has now dropped her suit against the City in state court and refiled this complaint in federal court. Both suits arise from the very same set of facts.

Plaintiff argues that the *Colorado River* doctrine is inapplicable to this case because there is now no parallel proceeding in state court. This Court disagrees. Plaintiff clearly pursued parallel actions in state and federal courts, using the Federal Rules to disguise her true intent: to forum shop.

In *Crawley v. Hamilton County Commissioners,* 744 F.2d 28 (6th Cir.1984), a section 1983 case in which prisoners challenged their conditions of confinement, the Sixth Circuit refused to apply the *Colorado River* doctrine in part because state court proceedings were not parallel to those in federal court. The Sixth Circuit observed in *Crawley* that the proceedings in state and federal courts involved different parties, different fact patterns, and different claims.[16]

Glover's case is clearly distinguishable: she is in effect splitting a single section 1983 lawsuit between two courts. The City, the only defendant in the federal action, was a party to the state court suit for eight months. Indeed, the City remained a party in both courts until well after defendant's motion to dismiss or stay was filed.

Although Glover had nonsuited the City of Portland in state court, she had neglected to dismiss her claims against the Mayor and Aldermen in their official capacities. Effectively, the City of Portland was still a party to the state suit.[17] Only after the defendant raised the issue of abstention did Glover manipulate the pleadings in an effort to make the cases less than parallel. Complaints in both courts obviously arise from one fact situation and rely upon the same legal theory, deprivation of a federally protected right without due process under color of state law. In fact, a close comparison of the plaintiff's Amendment to Petition in state court, which included section 1983 claims against all of the defendants, and of the plaintiff's recently filed complaint in this Court reveals that they are almost verbatim copies of each other.[18] Nothing new has been added; none of the original arguments are altered or omitted. Only the forum has changed.

The only distinction upon which the plaintiff can rely is that between the parties in state and federal court, a difference that did not exist until the defendant's motion called it to her attention. On these facts, this Court will not permit the plaintiff to waltz in and out of the reach of its discretion by the simple expedient of adding and subtracting parties. For the purposes of *Colorado River* analysis, these cases are parallel.

Given that the claims in state and federal court are parallel, we must now determine whether the elements described in *Colorado River* and *Cone* outweigh the District Court's obligation to hear the section 1983 claim against the City.

Because this is not an action *in rem,* the Court need not consider which forum first

---

16. The defendants in state court were Cincinnati officials, and the defendants in federal court were Hamilton County officials. The state court never addressed claims about overcrowding or the use of mace, shackles, and blackjacks, all of which were raised in federal court. The state proceeding concerned events occurring before August 15, 1981, whereas the federal court claims arose from events that took place after that date. *See Crawley,* 744 F.2d at 31.

17. *See Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

18. *Compare* Amendment to Petition (attached as Exhibit B to Defendant's Memorandum) *with* Complaint, *Glover v. City of Portland* (No. 3–87–0645).

obtained jurisdiction over some property at issue. Similarly, the geographical inconvenience of the federal forum is not an issue, although the defendant tries to make it one in its brief. Defendant's Memorandum at 10. The City argues that, in addition to the burden of supplying witnesses to two courts, the particular witnesses to be called are City officials of Portland who are needed close at hand for continuous city administration. *Id.* Sumner County Circuit Court and the Federal District Court for the Middle District of Tennessee are in adjacent counties approximately 50 miles apart, not 300 miles distant as were the courts in *Colorado River.* This distance does not impose the kind of geographic inconvenience sufficient to warrant a *Colorado River* dismissal.

Avoidance of piecemeal litigation is an important part of Colorado River's admonition to wise judicial administration. In considering this issue, courts look both to federal policies, if any, concerning the particular claim and to common sense considerations about the use of judicial resources and duplication of attorney efforts. In *Colorado River,* federal policy expressed in the McCarran Amendment urged courts to avoid the piecemeal adjudication of water rights in a river system. *Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247. By contrast, the Supreme Court refrained from applying the *Colorado River* doctrine in *Cone* in part because federal law required piecemeal adjudication by state and federal courts to give full effect to arbitra-

tion agreements. *Cone,* 460 U.S. at 20, 103 S.Ct. at 939. In both cases, federal law had something to say about whether parallel litigation should be tried in one or two forums.

Plaintiff in this case argues that because section 1983 claims are uniquely suited to a federal forum, federal policy supports her desire to divide her section 1983 claims between state and federal courts. While it is true that the history of 42 U.S.C. § 1983 favors federal adjudication of the federal claim, that history says nothing about whether piecemeal adjudication of this sort is to be preferred or avoided.[19] On the issue of piecemeal adjudication, the Court does not focus on whether a state or federal court should hear a single section 1983 claim but on whether several section 1983 claims arising under one set of facts should be heard by one court or two. Section 1983 offers no specific guidance about this unusual situation, in which plaintiff seeks to litigate some section 1983 claims in state court and one section 1983 claim in federal court. Hence, practical considerations emerge centerstage.

Dividing her section 1983 claims between two courts is a wasteful means of litigating the plaintiff's lawsuit. Because the City is the sole defendant in federal court and the Mayor and Aldermen are the remaining defendants in state court, both suits will require examination of the same witnesses about the same set of facts, construed under nearly identical legal theories.[20] This

---

**19.** By contrast, when plaintiffs seek to litigate state law claims in state court and section 1983 claims in federal courts, *Colorado River* dismissal of the section 1983 claim is inappropriate because some duplicative litigation in that instance is the "unavoidable price of preserving access to federal relief that § 1983 assures," *Tucker v. Callahan,* 663 F.Supp. 375, 380 (M.D. Tenn.1987), *citing Tovar v. Billmeyer,* 609 F.2d 1291, 1293 (9th Cir.1980). This plaintiff seeks to litigate some of her section 1983 claims in state court and to bring another section 1983 claim in federal court.

**20.** The parties have not submitted pretrial briefs in either state or federal court. Nonetheless, in a section 1983 action, predictable patterns emerge. In her case against the City, the plaintiff will have to prove that City officials (i.e., the

Mayor and Aldermen) were carrying out a City policy or custom that violated the plaintiff's federally protected rights. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The City may be expected to respond that (1) no policy or custom to deprive the plaintiff of those rights existed; (2) plaintiff was removed from office by a constitutionally valid procedure (i.e., she got all the "process" that she was due); and (3) the City is not liable for its officials' behavior under the doctrine of *respondeat superior. See Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. In her case against the Mayor and the Aldermen in their individual capacities, the plaintiff must prove that these persons acted under color of state law to deprive her of a federally protected right without due process of law. *See* 42 U.S.C. § 1983. Defendants may argue (1) the plaintiff had no federally protected right to her job; (2)

is just the kind of inefficiency that the *Colorado River* doctrine was created to address.

Similarly, the Supreme Court has urged district courts to consider the relative progress of the two suits in the state and federal forums. *See Cone,* 460 U.S. at 21, 103 S.Ct. at 939. The Court once described this element as an examination of which forum first got jurisdiction over the lawsuit; but in more recent times the Court has observed that priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions. *Id.* Under either standard, this plaintiff loses. Glover filed her section 1983 claims against all three defendants a full eight months before filing her complaint against the City in this Court. In that eight month period, discovery has commenced on the federal claims. Depositions have been taken, interrogatories and requests to admit have been sent. Oral arguments were heard on the City Attorney's motion for summary judgment, which the Circuit Court granted. All of these proceedings have occurred while the City of Portland was a defendant in Circuit Court. In stark contrast, this Court has received the complaint and the pleadings on the motion to dismiss or stay. The plaintiff proposes to split her section 1983 claims when one court could be on the brink of trial and the other has not yet received an answer to the original complaint. Clearly, the Circuit Court is in a better position to decide the entire case than is the District Court, which is new to the lawsuit.[21]

In both *Colorado River* and *Cone,* the Supreme Court observes that the plaintiff's previous willingness to litigate similar issues in state court is a persuasive factor supporting dismissal. *See Cone,* 460 U.S. at 16, 103 S.Ct. at 937, *citing Colorado River,* 424 U.S. at 820, 96 S.Ct. at 1247. In this case, the plaintiff appears much more than willing: for eight months she has litigated all other section 1983 claims in state court and continues to press those claims against the Mayor and Aldermen there. The Court finds this willingness to litigate her claims in state court supports dismissal.

The plaintiff's motives in filing suit may also bear on the Court's decision to dismiss. Although the Supreme Court did not rely on this factor in deciding the *Cone* case, the Court observed in dicta that the vexatious and reactive nature of the litigation were appropriate considerations. *See Cone,* 460 U.S. at 17, n. 20, 103 S.Ct. at 937, n. 20. Both factors are present in this case. Plaintiff filed her original section 1983 claims in state court and was satisfied to have them heard there until one defendant prevailed on a motion for summary judgment. After the hearing but before the final order dismissing the defendant was issued, plaintiff abruptly nonsuited the City and reinstated that claim in federal court. Plaintiff has spun through state and federal forums as if through a revolving door, securing nothing in her favor but delay. As the Supreme Court suggests in *Cone,* these motives support application of the *Colorado River* doctrine.

Unlike other cases in which the *Colorado River* doctrine is not applied, this case provides several factors to support dismissal. The actions are parallel. Two lawsuits over one set of facts that gave rise to section 1983 actions create piecemeal litigation when there is no statutory justification for it. Proceedings were initiated in state

---

if she did, the procedures followed by these officials conformed to the requirements of due process; (3) if the procedures were unconstitutional, the defendants are nonetheless qualifiedly immune from suit because the unconstitutionality of the City Charter provision under which they acted had not been clearly established. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

**21.** Other courts in this circuit have sought to avoid this kind of duplicative effort in section

1983 cases. *See Crawley v. Hamilton County Commissioners,* 744 F.2d 28, 31–32 (6th Cir. 1984) (when discovery completed in federal court and an injunction hearing weeks away, sending litigants to state court would be inappropriate and duplicative); *Garland v. Shapiro,* 579 F.Supp. 858, 862 (E.D.Mich.1984) (court would have considered a *Colorado River* dismissal had the case not been resolved on statute of limitations issue because state court had handled case for years and federal court had only the complaint and the motion to dismiss).

court and have progressed there against all of the defendants, including the City, for months. Plaintiff has shown herself willing to try section 1983 actions in state court. Further, plaintiff's motives seem at best an overreaction to the results of the state court proceedings and at worst a vexatious attempt to delay the litigation further. In the balancing test that *Colorado River* describes, these factors weigh heavily in favor of dismissal. The remaining issue is whether the fact that the claims in both courts arise under 42 U.S.C. § 1983 prevents dismissal when a wealth of other factors support it.

## VI.

This Court is well aware that application of the *Colorado River* doctrine to section 1983 actions rarely results in stay or dismissal of the federal claim.[22] Further, this Court is mindful of its obligation to hear cases properly before it. The mere availability of the Circuit Court to hear this action does not, without more, permit this Court to dismiss Glover's claim against the City. *See Hanna v. Toner,* 630 F.2d 442, 445 (6th Cir.1980), *citing Colorado River,* 424 U.S. at 813–14, 96 S.Ct. at 1244–45, and *Alabama Pub. Serv. Comm'n v. Southern R. Co.,* 341 U.S. 341, 361, 71 S.Ct. 762, 774, 95 L.Ed. 1002, 1015 (1951). Because the Circuit Court and this District Court have concurrent jurisdiction to decide the federal law issues, our task is to ascertain whether there exist "exceptional" circumstances to justify its surrender. *See Cone,* 460 U.S. at 25, 103 S.Ct. at 941. Although the presence of federal law issues must always be a major factor weighing against surrender, the presence of federal law alone does not prohibit abstention. Application of the *Colorado River* doctrine involves balancing the obligation to hear cases over which a federal court has jurisdiction against considerations of wise judicial administration. Hence, in this case it is appropriate to examine the federal policy underlying 42 U.S.C. § 1983.

Modern federal policy about the disposition of section 1983 claims favors resolution by a federal court but does not mandate it. Originally enacted during the Reconstruction Era to aid enforcement of the Fourteenth Amendment, this statute was intended to provide a supplemental federal remedy for violations of civil rights where state law was inadequate or, though adequate in theory, not available in practice. *See Tucker v. Callahan,* 663 F.Supp. 375 (M.D.Tenn.1987), *citing Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The underlying rationale for enactment of section 1983—distrust of state courts' enforcement of civil rights—has been eroded in recent years. In 1980, the Supreme Court held that Congress did not intend to bar state courts from hearing section 1983 actions. *See Martinez v. California,* 444 U.S. 277, 283–84, n. 7, 100 S.Ct. 553, 558, n. 7, 62 L.Ed.2d 481, 488, n. 7 (1980). Section 1983 actions may be brought in state courts, *Maine v. Thiboutot,* 448 U.S. 1, 10–11, 100 S.Ct. 2502, 2507–08, 65 L.Ed.2d 555, 563 (1980), and are now routinely litigated there.[23] In 1986, the Tennessee Supreme Court joined the ranks and exercised jurisdiction over a section 1983 claim in *Poling v. Goins,* 713 S.W.2d 305 (Tenn.1986). State courts are now considered by the Supreme Court, as well as by this Court, to be fully competent to decide claims arising under section 1983.

Plaintiff suggests that the Circuit Court will not be as vigorous as a federal court in giving effect to her constitutional right to due process. *See* Plaintiff's Response at 4. None of the evidence in the state court proceedings supports this conclusion. The state court promptly reinstated the plaintiff to her job after deciding that she had not committed "grave misconduct" under state law. More importantly, Glover's own actions belie this argument. The plaintiff continues to press her section 1983 claims against other defendants—the Mayor and Aldermen—in Circuit Court. Plaintiff can-

---

**22.** In a treatise on section 1983 actions, Martin A. Schwartz observes that courts only occasionally invoke *Colorado River* abstention in section 1983 actions. *See* Schwartz at 265, n. 82.

**23.** *See* Schwartz at 15, *citing* Steinglass, *The Emerging State Court § 1983 Action: A Procedural Review,* 38 U.Miami L.Rev. 381, 385–86 (1984).

not be heard to complain that she will not get a fair and competent result in state court on her section 1983 claim against the City when she is apparently satisfied with that same court's ability to decide virtually identical claims against other defendants arising under the same statute. When the Circuit Court is considered by the plaintiff to be a more than adequate forum for resolving her section 1983 claims against some defendants, she cannot truly consider it incapable of resolving a section 1983 claim against another defendant on the same facts. Indeed, the admonitions of *Colorado River* to avoid piecemeal litigation and to consider the relative progress of the two lawsuits seem even more persuasive on these facts.

There are cases from both the Sixth Circuit and this Court that address the *Colorado River* doctrine in the context of a section 1983 claim. Neither of these cases says that the presence of section 1983 bars application of the doctrine. Further, those cases in which the courts have refused to "abstain" are distinguishable from this case.

In *Crawley v. Hamilton County Commissioners*, 744 F.2d 28 (6th Cir.1984), prisoners challenged their conditions of confinement under section 1983. The Sixth Circuit declined to affirm a district court's dismissal under *Colorado River* in part because none of the *Colorado River* factors were present. There was no *res* at stake. Both state and federal forums were equally convenient. There was no danger of piecemeal litigation. Although the state law claim was filed first, much more progress had been made in federal court. *Id.* at 31. The Court of Appeals added that because federal law was dispositive on the merits, "this type of institutional lawsuit is the kind of case that should be litigated in a federal forum." *Id., citing Hanna v. Toner*, 630 F.2d at 444. The Court cited another prisoner's case in which application of the *Colorado River* doctrine was considered inappropriate. The Sixth Circuit clearly considered *Colorado River* abstention impermissible in prisoners' cases alleging section 1983 violations. This narrow prohibition, combined with the fact that both *Crawley* and *Hanna* were rendered before the Tennessee Supreme Court's decision to permit state courts to hear section 1983 cases, suggests that the Sixth Circuit would not automatically refuse to apply the *Colorado River* doctrine to section 1983 claims.

In *Tucker v. Callahan*, 663 F.Supp. 375 (M.D.Tenn.1987), the plaintiff sued a police officer, the City of New Johnsonville, the Mayor, the Police Commissioner, and the Chief of Police. The plaintiff alleged a section 1983 violation when the police officer purportedly failed to intervene during a brutal assault against Tucker. The plaintiff sued these defendants in federal court on the section 1983 claim and in state court on claims arising under Tennessee law.

Unlike the plaintiff in this case, Tucker never filed any of his section 1983 claims in state court. After analyzing the case under the factors described in *Colorado River* and *Cone*, this Court concluded that the federal forum was not inconvenient and that there had been no appreciable difference in the progress of the suits in the state and federal courts. *See id.* at 380–81. In this context, the Court observed that piecemeal litigation of the state and federal claims was the unavoidable price of preserving access to federal relief that section 1983 assures. *Id., citing Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir.1980).

In *Tucker*, the Court was also concerned that requiring the state court to adjudicate both state and federal claims would bar access to a federal forum in the future, because a state court decision would be res judicata on later claims. *Id.* at 379–80, *citing Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In the instant case, however, plaintiff has maintained her section 1983 actions against other defendants in state court. At the very least, state court disposition of these claims could have issue-preclusive effect in this Court, a problem with which this plaintiff appears unconcerned. *See Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 441, 66 L.Ed.2d 308 (1980) (state court judgments

on section 1983 claims may have issue-preclusive effect on a federal court).

## VII.

This Court concludes that the section 1983 claim against the City should be dismissed. Many of the factors described by the Supreme Court as valid considerations promoting dismissal are present. Piecemeal litigation will result from separate trials on the section 1983 claims that arise under one fact pattern. Extensive progress has been made in state court on the federal claim while the City was a party to the state court suit; virtually no progress has been made in this Court. The plaintiff's propensity for switching forums, the progress made on the federal claims in state court, and the timing of the recent complaint suggest that the claim is both vexatious and reactive. Although federal law is dispositive on the merits, the plaintiff still has section 1983 claims pending against other defendants in state court. On these facts, the argument that the state court is unable to provide an adequate vehicle for resolution of the issues between the parties is both inaccurate and unpersuasive.

Accordingly, the defendant's motion to dismiss is granted.